Opinion
 

 FRANSON, P. J.
 

 Statement of the Case
 

 Appellant Oildale Mutual Water Company (Oildale) filed a complaint against respondent North of the River Municipal Water District (District) and the individual members of District’s board of directors alleging that District was overcharging Oildale for the water that District was providing under a water service agreement. The complaint further sought a declaration that these charges were unconstitutional under article XIII B of the California Constitution.
 

 Following a bench trial, the court issued a statement of decision. The court held the District was bound by the water service agreement in setting the water rates and that under this agreement the rates must represent the costs reasonably borne by the District in providing water to Oildale. The court found that District could not properly charge Oildale for a portion of the costs relating to certain facilities which were not used to deliver water to Oildale. The court further held that Oildale did not contract for, did not need and did not want these systems to be potential backup. However, the court also found “The District’s charge of depreciation to the operation and maintenance account on those facilities which are necessary for delivering water to [Oildale] is appropriate. Depreciation may properly be charged for those facilities which may otherwise properly be charged to [Oildale]. This conclusion is based on the factual testimony presented by [District’s] experts and the State Controller’s Uniform System of Accounts for water utility districts. ...”
 

 On appeal, Oildale challenges this depreciation finding on the ground that it is not supported by the evidence. Oildale also contends the trial court applied an incorrect legal standard when it held Oildale had the burden of proving the District had violated California Constitution, article XIII B.
 

 Statement of Facts.
 

 Oildale was formed in 1919. It is a nonprofit corporation which provides residential, commercial and industrial water through approximately 6,300
 
 *1621
 
 service connections. Until 1977, Oildale relied on ground water to supply its customers.
 

 When the state water project was proposed, the Kern County Water Agency (KCWA) got involved and entered into a water supply contract with the state. To hold down the planning and construction costs for this supplemental water, the District was formed in 1969 as a coordinating organization.
 

 In order to distribute the supplemental water, it was necessary for the District to construct certain facilities. A $2.3 million bond issue was approved in 1974 to finance the construction of these facilities.
 

 Oildale and District executed a water service agreement on December 16, 1975. The agreement provides that “Payment of all charges shall be made at the rates, times and in the manner provided for in the ‘Rules and Regulations for Distribution of Water, North of the River Municipal Water District’, as the same may be amended and supplemented from time to time by the Board of Directors of the District.” Under these “Rules and Regulations,” the charges consist of four components: (1) KCWA water cost; (2) KCWA operation and maintenance cost; (3) KCWA pumping cost; and (4) District costs.
 

 The District costs charged to Oildale have increased each year as follows:
 

 FISCAL YEAR
 

 DISTRICT COSTS
 

 7/1/77 to 6/30/78
 

 $ 44,697
 

 7/1/78 to 6/30/79
 

 135,192
 

 7/1/79 to 6/30/80
 

 150,644
 

 7/1/80 to 6/30/81
 

 215,968
 

 7/1/81 to 6/30/82
 

 255,287
 

 7/1/82 to 6/30/83
 

 258,824
 

 7/1/83 to 6/30/84
 

 260,068
 

 7/1/84 to 6/30/85
 

 283,366
 

 Oildale has not paid the District costs since July 1, 1981.
 

 
 *1622
 
 Discussion
 

 I.
 
 Depreciation was properly included as a District cost.
 

 *
 

 II.
 
 The trial court incorrectly placed the burden of proving a violation of California Constitution article XIII B on Oildale.
 

 Oildale alleged in its complaint that the District’s operation and maintenance charges violated California Constitution article XIII B, section 1 in that such amounts exceeded the District’s appropriations limit.
 
 [1]
 
 The trial court concluded “that a party seeking a refund or seeking a declaration that California Constitution Article XIIIB, Section 1 has been violated carries the burden of proof on whether the revenues from the water charges exceeded] the costs reasonably borne in providing [the water].” The court found Oildale had failed to meet its burden of proof and consequently ruled in favor of the District on this issue.
 

 Article XIII B was added to the California Constitution in November 1979 through the adoption of Proposition 4, commonly referred to as the Gann Initiative.
 
 (County of Placer
 
 v.
 
 Corin
 
 (1980) 113 Cal.App.3d 443, 446 [170 Cal.Rptr. 232] .) It was adopted less than 18 months after the addition of article XIII A, and was billed as “ ‘the next logical step to Proposition 13’ [article XIII A].”
 
 (Ibid.)
 
 “While article XIII A was generally aimed at controlling ad valorem property taxes and the imposition of new ‘special taxes’ [citations], the thrust of article XIII B is toward placing certain limitations on the growth of appropriations at both the state and local government level; in particular, article XIII B places limits on the authorization to expend the ‘proceeds of taxes.’”
 
 (Ibid.)
 

 Article XIII B requires governmental entities, including the District, to establish an “appropriations limit” for each fiscal year. (Cal. Const., art. XIII B, § 8, subds. (d) and (h); Gov. Code, § 7910.) The authorization to expend the proceeds of taxes and state subventions during a fiscal year cannot exceed this appropriations limit. (Cal. Const., art. XIII B, § 1 and § 8, subd. (b).) Revenues received in excess of authorized appropriations
 
 *1623
 
 must be returned to the taxpayers within the following two fiscal years. (Cal. Const., art. XIII B, § 2.)
 

 Article XIIIB does not limit the ability to expend government funds collected from all sources.
 
 (County of Placer
 
 v.
 
 Corin, supra,
 
 113 Cal.App.3d 443, 447.) With respect to local governmental entities such as the District, limits are placed only on the authorization to expend the proceeds of taxes levied by or for that entity, in addition to proceeds of state subventions.
 
 (Ibid.)
 

 “Proceeds of taxes” is defined as including, but not being restricted to, “all tax revenues and the proceeds to an entity of government, from (i) regulatory licenses, user charges, and user fees to the extent that such proceeds exceed the costs reasonably borne by such entity in providing the regulation, product, or service, and (ii) the investment of tax revenues. With respect to any local government, ‘proceeds of taxes’ shall include subventions received from the state, . . .” (Cal. Const., art. XIII B, § 8, subd. (c).)
 

 “In summary, for local entities, ‘proceeds of taxes’ includes, but is not restricted to: (1) all tax revenues; (2) excessive regulatory license fees and excessive user charges and fees; (3) the investment of tax revenues; and (4) subventions from the state.”
 
 (County of Placer
 
 v.
 
 Corin, supra,
 
 113 Cal.App.3d at p. 448.)
 

 Oildale relies on
 
 Beaumont Investors
 
 v.
 
 Beaumont-Cherry Valley Water Dist.
 
 (1985) 165 Cal.App.3d 227 [211 Cal.Rptr. 567], in support of its argument that the governmental entity has the burden of proving compliance with article XIII B. There, the court was faced with the issue of whether a facilities fee was an invalid special tax under article XIII A (Prop. 13). The resolution of this issue turned on whether the facilities fee sought to be imposed by the water district did or did not “exceed the reasonable cost” of constructing the water system improvements. In placing the burden of proof on the water district, the court reasoned: “The purpose of Proposition 13 being to impose a broad constitutional restriction on the power of local agencies to impose ‘special taxes,’ subject to the limited statutory exception contained in Government Code section 50076, it rightfully follows that the local agency which seeks to avoid the general rule should have the burden of establishing that it fits the exception. Still another reason for placing the burden on the local agency is to ensure an adequate record of governmental compliance with the statute. Otherwise, if the taxpayer were forced to prove that the fee is not reasonably related to the service for which it was imposed, local agencies would gain a litigational advantage by
 
 not
 
 undertaking, or at least not recording, any effort to relate
 
 *1624
 
 the cost of the service to the fee charged. Such a perversion of process was surely not intended by the voters or the Legislature.” (165 Cal.App.3d at pp. 235-236.)
 

 As noted above, both article XIII A and article XIII B are aimed at controlling taxes. Article XIII A accomplishes this goal through restrictions on the imposition of additional taxes; whereas, article XIII B places limits on the government’s authority to expend the proceeds of taxes.
 

 Here, unlike the situation in
 
 Beaumont Investors
 
 v.
 
 Beaumont-Cherry Valley Water Dist., supra,
 
 165 Cal.App.3d 227, the District is not seeking to avoid a general rule. The District’s charges are not presumptively “proceeds of taxes” under article XIII B. Only excessive charges constitute such “proceeds of taxes.” Thus, it is not necessary that the charges fit into a statutory exception for the District to prevail. Therefore, the
 
 Beaumont
 
 court’s first reason for placing the burden of proof on the local agency is not applicable here.
 

 However, both in this case and in
 
 Beaumont,
 
 the court was requested to determine whether the fee imposed by the water district exceeded the reasonable cost of providing the water. Thus, the
 
 Beaumont
 
 court’s second reason for placing the burden of proof on the local agency, i.e., ensuring an adequate record of governmental compliance with the statute, is equally applicable here. If Oildale is required to prove that the fees charged by the District are excessive and therefore “proceeds of taxes,” it would give the District a litigational advantage to maintain incomplete or misleading records regarding the costs of providing water to Oildale. The same reasoning applies to the District’s records of its other “tax revenues” and its appropriations limit. Further, since it is the District that makes the expenditures and keeps the records, it is the District that has the knowledge of and access to the evidence regarding its compliance with article XIII B. Thus, although in general the burden of proof of a fact rests on the party whose claim depends on the existence of that fact (Evid. Code, § 500), policy and fairness dictate that the District carry the burden of proving compliance with article XIII B. (See Cal. Law Revision Com. com., 29B West’s Ann. Evid. Code (1966 ed.) § 500, p. 431; cf.
 
 Worsley
 
 v.
 
 Municipal Court
 
 (1981) 122 Cal.App.3d 409, 420 [176 Cal.Rptr. 324].)
 

 Since the trial court improperly allocated the burden of proof on the article XIII B cause of action, the judgment must be reversed on this issue. Although an appellate court has authority to make findings of fact under certain circumstances (Code Civ. Proc., § 909), it should not do so where, as here, the trial court has made no findings on the issue, and the
 
 *1625
 
 evidence is in conflict.
 
 (In re Marriage of Davis
 
 (1983) 141 Cal.App.3d 71, 75-76 [190 Cal.Rptr. 104].) Therefore, the issue must be remanded for further proceedings.
 

 Disposition
 

 The judgment is reversed and the cause remanded for further proceedings on the California Constitution article XIII B issue. The parties shall bear their own costs on appeal.
 

 Best, J., and Dibiaso, J., concurred.
 

 *
 

 See footnote,
 
 ante,
 
 page 1628.
 

 [1]
 

 Article XIII B, section 1 provides: “The total annual appropriations subject to limitation of the state and of each local government shall not exceed the appropriations limit of such entity of government for the prior year adjusted for changes in the cost of living and population except as otherwise provided in this Article.”