[No. B048717. Second Dist., Div. Six. May 2, 1991.]

In re the Marriage of DOMINIC M. and PATRICE MARTIN.
DOMINIC M. MARTIN, Appellant, v.
PATRICE MARTIN, Respondent.

COUNSEL

Christian E. Iversen for Appellant.

Daniel L. Helbert for Respondent.

OPINION

YEGAN, J.—Dominic M. Martin, petitioner in the underlying action for dissolution of marriage, appeals claiming the evidence is insufficient to uphold the spousal support award and ex-wife is not entitled thereto. He is wrong. We hold that a spouse may not finance a "buy-out" of community property and then succesfully claim inability to pay spousal support.

We view the evidence in the light most favorable to the order here under review as is required by the familiar rule governing appellate review. (*Kulko* v. *Superior Court* (1977) 19 Cal.3d 514, 519, fn. 2 [138 Cal.Rptr. 568, 564 P.2d 353].) The parties married on December 30, 1976. In 1978 husband was a winemaker and wife was the general manager of their winery in Paso Robles. The grapes were sweet but the marriage turned sour. The parties separated on June 6, 1987.

The parties agreed to a property division wherein husband retained community assets and paid wife one-half the value in cash, i.e., a "buy-out." Husband paid her $209,500: $136,000 for her interest in the winery's stock, $51,000 for her interest in the family residence, and $22,500 for her interest in the winery's pension and retirement accounts. The $136,000 payment represented wife's interest in 3,400 shares of stock at $40 per share. In addition to this community property stock, husband owned 12,797 shares of separate property stock in the winery's parent corporation worth $511,880.

Husband's effort to completely jettison wife from his life was foiled by the trial court's award of spousal support with a reservation of jurisdiction thereon, consistent with statutory and decisional law.

The trial court ordered that husband pay wife " . . . as and for spousal support, the sum of six hundred Dollars ($600.00) per month, commencing October 1, 1989 and continuing on the first day of each month thereafter until further order of the court, the death, or the remarriage of the Respondent, whichever occurs first."

Consistent with the legislative command of Civil Code section 4801, the trial court made express factual findings which could serve as a textbook example of how trial courts should proceed. The trial court found that wife was earning approximately $30,000 per year as the general manager of another winery. After taking into account her articulated goal of purchasing a single family residence, the trial court attributed to wife approximately $8,000 per year interest income on the money received from husband. The trial court determined that husband had a gross income of $54,000 per year, a $5,000 annual bonus, and received "free housing" worth $6,000 per year.

In addition, the court found (1) husband's ". . . earning capacity is sufficient to maintain the standard of living established during the marriage," (2) ". . . [wife's] is not," that his ". . . marketable skills are substantially better than" wife's, and (3) she ". . . did contribute somewhat to . . . [husband's] education" by supporting him when he obtained his winemaking degree from U.C. Davis.

The court also found husband had the ability to pay $600 per month spousal support and that wife was in need thereof. In this regard, the court said:

"I believe that . . . [wife] clearly is not living at the standard of living established during the marriage . . . . This is a long term marriage . . ." and ". . . her standard of living is decreased."

The trial court was aware that the money used by husband to pay wife for her share of the stock, family residence, pension and retirement accounts, was borrowed and that petitioner made monthly payments thereon. The court also considered the separate assets of the parties (including husband's approximate half million dollar's worth of separate property stock), their ages, and their health.

■ Appellant's claim that the evidence is insufficient to support the order is without merit. ■ " 'A judgment or order is *presumed correct.* All intendments and presumption are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the

constitutional doctrine of reversible error.' [Citations.]" (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) **(1b)** Here, on virtually every criterion articulated in Civil Code section 4801, there is sufficient evidence to support the trial court's determination.

■ "With rhythmic regularity it is necessary for [the appellate courts] to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge . . . the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnessess, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen." (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757].) Our award of attorney's fees to wife, to which she is entitled (see discussion, *post*), should serve as a reminder and warning to litigants and counsel of the rules articulated in *Overton* v. *Vita-Food Corp.*, *supra*).

■ " 'Although not unlimited, a trial court's discretion is broad in setting the amount of spousal support to be awarded upon dissolution of marriage.' [Citation.]" (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 89 [154 Cal.Rptr. 413, 592 P.2d 1165]; *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41]; see also *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913, 916-917 [247 Cal.Rptr. 522]; Civ. Code, § 4801, subd. (a).)

" 'The term [judicial discretion] implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [Par.] To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision.' [Fn. omitted.]" (*In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].)

■ Given the trial court's express articulation pursuant to Civil Code section 4801, husband has not here demonstrated as a matter of law that the trial court's reservation of jurisdiction and spousal support award was an abuse of discretion, i.e., that it was arbitrary, capricious, or whimsical.

"For purposes of retaining jurisdiction, there is a presumption affecting the burden of providing evidence, that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration." (Civ. Code, § 4801, subd. (d).) Here, the marriage was over 10 years,

of "long duration," and the trial court correctly decided not to "burn its bridges." (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 453.)

Here, husband may not finance a "buy-out" of commmunity property and then successfully claim inability to pay spousal support. By reason of well-settled principles, wife is entitled to one-half of the community property (see e.g., Civ. Code, § 4800, subd. (a)) or an equalizing payment therefor. Upon dissolution, the $209,500 received from husband became her separate property. While wife ". . . was not obligated to invest her separate assets in a certain manner . . ." (*In re Marriage of Kennedy* (1987) 193 Cal.App.3d 1633, 1640 [239 Cal.Rptr. 151]; see also *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 635 [120 Cal.Rptr. 654]), the trial court correctly factored this separate property estate into the spousal support equation. (See Civ. Code, § 4801, subd. (a)(5), *In re Marriage of Kennedy, supra,* 193 Cal.App.3d at pp. 1640-1641.)

Where, as here, there is a need for spousal support to maintain the standard of living established during the marriage, and an ability to pay, a spouse should not be penalized for having contributed to the growth of community property by not receiving spousal support. Here wife agreed to receive a $209,500 cash "buy-out" for her interest in the community and she should not be penalized for this agreement. Were we to sustain husband's theory, this would be the unfair consequence.

We elect to treat wife's request for sanctions (see *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645 [183 Cal.Rptr. 508, 646 P.2d 179] et seq.) as a simple request for attorney's fees. (Civ. Code, § 4370, subd. (a).) ■ " 'To warrant an award of fees on appeal, four conditions must be met: (1) the requesting spouse must show a need for the award; (2) the paying spouse must have the ability to pay the fees; (3) the appeal must be taken in good faith; and (4) there must be reasonable grounds for the appeal, although this does not imply that the requesting spouse must prevail on appeal.' [Citation.]" (*In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277, 1290 [266 Cal.Rptr. 548]; *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 78 [190 Cal.Rptr. 104].) Wife has need, husband has the ability to pay; and given the nature of the grounds urged on appeal and the time-honored rules governing appellate review, the appeal is not in good faith, and there are no reasonable grounds therefor. Her request for attorney's fees on appeal is granted. Although we have the power to render such an award ourselves, "[t]he request for such fees [and the amount thereof] is a matter which should ordinarily be addressed to the trial court. . . ." (*Craft* v. *Craft* (1957) 49 Cal.2d 189, 194 [316 P.2d 345]; *In re Marriage of Davis, supra,* 141 Cal.App.3d at p. 78.)

The judgment is affirmed. The trial court shall determine the amount of attorney's fees that husband shall pay wife. Costs on appeal to respondent.

Stone (S. J.), P. J., and Gilbert, J., concurred.