Filed 6/22/15  Marriage of Weiss CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of BRETT WEISS and LI JUAN WEISS. | D065042 |
| BRETT WEISS, | |
| Appellant, | (Super. Ct. No. D539194) |
| v. | |
| LI JUAN WANG, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed; motion for sanctions on appeal denied.

Law Offices of Stephen Ure and Stephen Ure for Appellant.

Yelman & Associates, Sara R. Neumann and Tara Yelman for Respondent.

Brett Weiss appeals from an order awarding his former wife, Li Juan Wang,

$22,500 in attorney fees as a sanction for Weiss's conduct precluding settlement and

increasing litigation costs in a family law proceeding. (Fam. Code,[1] § 271, subd. (a).) We affirm. We deny Wang's motion for sanctions on appeal.

RELEVANT FACTS AND PROCEDURE

We summarize the evidence in the light most favorable to the court's factual findings. (See *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 931.)

Weiss and Wang (a Chinese citizen) married in March 2010, and separated two years later in June 2012. Neither party filed for dissolution, but in October 2012 Weiss filed an annulment petition alleging Wang had committed fraud. Weiss notified the Immigration and Naturalization Service (INS) of his petition, seeking to interfere with Wang's legal residency application. Weiss told Wang he would withdraw his annulment petition if Wang agreed to "walk away from the marriage with her car and nothing more." (Italics omitted.)

Wang and her attorney repeatedly requested that Weiss dismiss the annulment petition, stating it had no merit and was brought solely to harass Wang. Weiss's attorney declined to dismiss the petition, and refused to identify the basis for the petition, stating the issues would be "addressed" at the annulment hearing.

From November 2012 through March 2013, Wang attempted to obtain discovery regarding the grounds for the annulment petition. Weiss failed to cooperate and engaged in actions preventing his deposition and precluding Wang from obtaining relevant information.

---

[1]     All undesignated statutory references are to the Family Code.

2

On March 7, the court (Judge William McAdam) held a hearing on Wang's first section 271 motion in which she sought sanctions for Weiss's obstructionist conduct. After the hearing, the court entered an order finding Weiss "engaged in conduct clearly not in conformance with [section] 271," and ordered Weiss to pay sanctions of $7,443.

The annulment trial was scheduled for Monday April 29. On Friday April 26, Weiss informed Wang he would withdraw his annulment petition and would proceed with a dissolution action. On April 29, the parties stipulated to a judgment of dissolution on status.

Shortly after, Wang filed a second section 271 sanctions motion, seeking attorney fees incurred in defending against Weiss's " 'frivolous' " annulment petition. A trial was held on Wang's motion in September 2013. Both parties were represented by counsel. Both parties testified, were cross-examined, and submitted exhibits. At the hearing, Wang claimed Weiss filed the annulment petition in bad faith without any valid legal or factual basis and reported her to immigration officials solely to intimidate and harass her and increase her litigation costs. Weiss countered he filed the petition based on his former attorneys' advice and on his good faith belief he was entitled to an annulment based on Wang's extramarital affairs, lies that " 'she loved' " him at the time of the marriage, and marrying him for a "green card."

After considering the evidence, the court (Judge Jeffrey Barton) found Wang met her burden to show entitlement to section 271 sanctions, and awarded her $22,500, which was about one-third of her claimed attorney fees. In a statement of decision, the court found there was no arguable basis for the annulment petition and Weiss's filing and

3

maintenance of the petition reflected uncooperative conduct that precluded settlement and increased attorney fees. The court stated the evidence was "un-rebutted" that the parties had a longstanding romantic relationship spanning eight years, including during the marriage, and there is no legal basis for an annulment under these circumstances. The court stated Weiss's claim that Wang had never "loved him and had in essence 'used' him to obtain a green card and legal status in this country" did not support an annulment even if the alleged facts were true. The court stated Weiss's "fail[ure] to dismiss a defective nullity petition until the day before trial . . . caused the expenditure of additional and unnecessary work by [Wang's] attorney."

The court also found Weiss's reporting the annulment petition to the INS to be "sanctionable conduct" because there was no valid basis for the report and the report substantially increased Wang's costs in the family law proceeding. The court stated that Weiss's offer to dismiss the nullity proceeding, but "only if *his* terms of settlement were reached" frustrated meaningful settlement and violated the policy of encouraging cooperation between the parties. (Italics added.)

The court awarded Wang $22,500 under section 271. The court declined to award additional attorney fees under sections 2255 or 2030, which require the court to evaluate the *relative* income and needs of the parties. With respect to this latter conclusion, court stated: "Neither party was credible regarding the income or assets currently under their control. . . . [I]n reality, the Court cannot make an accurate determination of either the need or the respective ability of either party to pay fees based on their evasive, incomplete and impeached testimony. Thus, *need and ability* fees are denied." (Italics

4

added.)  The court noted that "both sides . . . conducted a strident and argumentative litigation" and "neither [side] should be rewarded for so doing."

Six weeks later, in November 2013, the court issued a supplemental order, stating that in awarding the $22,500 under section 271, it "gave careful and balanced consideration to the documentary and testimonial evidence presented by the parties, the credibility of the witnesses, the argument of counsel, and applicable statutory case law." The court also noted a prior attorney fees award of $3,500 to Wang's attorney remains unpaid, even though the amount was due by May 13, 2013.

## DISCUSSION

### I. *Appellate Rules*

It is a fundamental rule of appellate law that the lower court's ruling is presumed correct.  We are required to make all reasonable factual inferences favoring the court's order.  (*Gee v. American Realty & Construction, Inc*. (2002) 99 Cal.App.4th 1412, 1416.) As the party seeking reversal, the appellant has the burden to provide an adequate record to overcome the presumption of correctness and show prejudicial error.  (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.)

A party has the duty "to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations."  (*Bernard v. Hartford Fire Ins. Co*. (1991) 226 Cal.App.3d 1203, 1205; Cal. Rules of Court, rule 8.204(a)(1)(C).)  When an appellant fails to provide citations to the record supporting his factual assertions, his arguments are deemed waived.  (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see also *City of Lincoln v. Barringer* (2002)

5

102 Cal.App.4th 1211, 1239; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)  Factual statements not supported by citations to the record are improper and cannot be considered.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.)

A party who challenges the factual basis of a court's conclusion must also set forth, discuss, and analyze all the evidence on that point, both favorable *and unfavorable*.  (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)  If the appellant fails to cite and discuss *all* of the relevant evidence, we may treat the issue as waived.  (*Ibid.*)

II.  *General Principles Governing Attorney Fees Under Section 271*

Section 271 provides a family court with broad discretion to impose sanctions on a party who engages in conduct that "frustrates the policy of the law to promote settlement of litigation and . . . reduce the cost of litigation."  (§ 271, subd. (a).)[2]  We review a section 271 sanctions order under the abuse of discretion standard.  (*In re Marriage of*

---

[2]  Section 271, subdivision (a) states:  "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.  In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities.  The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed.  In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

6

*Feldman* (2007) 153 Cal.App.4th 1470, 1478.) " ' ". . .' "[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order." ' " [Citation.] "[W]e must indulge all reasonable inferences to uphold the court's order." [Citation.]' " (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 652-653; see *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.) " 'The trier of fact is the sole judge of the credibility and weight of the evidence. . . .' [Citation.]" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.)

In deciding the proper sanctions amount, a court should take into consideration both parties' incomes, assets, and liabilities. (§ 271, subd. (a).) However, section 271 is not a needs-based statute. (§ 271, subd. (a); *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) A court may award section 271 fees even if the moving party has substantial assets and has the ability to pay his or her own fees. "The only stricture imposed by [section 271] is that the sanctions may not impose an unreasonable financial burden on the party sanctioned." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 995.) In determining whether a sanctions award will impose this burden, the court may consider the party's existing income and assets *and* the ability to earn income. (See *In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 60; see also *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 180.)

III. *Analysis*

A. *Court Did Not Abuse Discretion in Imposing Section 271 Sanctions*

Weiss contends the court abused its discretion in finding his actions frustrated the settlement process and unnecessarily increased litigation costs. He argues that he always acted in good faith and was "willing and actively trying to settle the case," and there is "no indication in the record" that he "had a motive to frustrate settlement or purposely run up costs."

Weiss waived this argument by failing to present a summary of all evidence presented at the section 271 hearing. In the Factual section of his appellate brief, Weiss did not discuss the evidence, and instead asserted only that "the trial on attorney's fees and sanctions was heard on September 23, 2013. During this evidentiary hearing, both parties testified and a written decision was entered . . . ." In the Argument section, Weiss discussed only his own testimony, and not the evidence and arguments presented by Wang. Weiss did not provide citations to the factual record for many of these factual assertions.

"Failure to set forth [all of] the material evidence on an issue waives a claim of insufficiency of the evidence." (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 96.) Parties challenging the trial court's decision based upon the absence of substantial supporting evidence " 'are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed waived.' . . . [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) By discussing only evidence tending to support his position and failing to provide

8

proper supporting record citations, Weiss waived his right to challenge the sufficiency of the evidence to support the court's conclusions. (See *Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246; *Brockey v. Moore, supra*, 107 Cal.App.4th at pp. 96-97.)

Weiss's contention additionally fails on its merits. The evidence was undisputed that the parties had a romantic relationship during the marriage, and therefore the annulment petition was frivolous on its face. (See *In re Marriage of Ramirez* (2008) 165 Cal.App.4th 751, 757; *In re Marriage of Meagher & Maleki* (2005) 131 Cal.App.4th 1, 6-9.) Wang and Wang's attorney repeatedly communicated to Weiss and his counsel that the annulment petition was without merit and that it was substantially increasing Wang's litigation costs. Weiss nonetheless waited until the eve of the annulment trial to withdraw the claim. Further, the evidence supported the court's finding that Weiss reported the annulment petition to the INS for the purpose of pressuring Wang to agree to an unfair settlement and substantially increased the litigation costs by requiring Wang to retain an immigration attorney and requiring her own attorney to research and pursue a defense on the immigration issues.

Ignoring this evidence, Weiss relies on various facts that are favorable to him, including his willingness to withdraw the annulment claim before trial, his testimony that he relied on his attorneys' advice in pursuing the annulment claim, and his testimony that he in good faith believed he had valid reasons to report Wang to the INS. Weiss made these same arguments to the trial court, and the court declined to credit the evidence and/or find that these facts negated Wang's evidence that Weiss had engaged in uncooperative conduct. The court had a reasonable basis to reach these conclusions.

9

Weiss additionally argues the section 271 sanctions were improper because he "did not appear at the [section 271] hearing prepared or expecting to defend his petition for nullity." Weiss does not cite to any facts supporting this claim, and this contention is contradicted by the record. Wang's section 271 moving papers identified Weiss's annulment petition as a primary ground for her argument that section 271 sanctions were warranted. At the trial, both parties testified (and were cross-examined) about the grounds for the annulment petition and whether Weiss had a valid basis to bring the claim or whether it was brought for an improper purpose. Weiss had a full and fair opportunity to present his defense at the sanctions hearing.

### B. *The Court Did Not Abuse Discretion in Sanctions Amount*

Weiss also contends the court erred because it did not determine his ability to pay the $22,500 sanctions award. In support, Weiss directs us to one portion of the court's lengthy statement of decision in which the court stated it was unable to make "an accurate determination of either the need or the respective ability of either party to pay fees . . . ."[3]

The court made this statement in connection with its ruling on Wang's request for

---

[3] This portion of the court's ruling read: "Neither party was credible regarding the income or assets currently under their control. If [Weiss] is to be believed, he makes $1,400.00 a month. He does have some liquid assets which will be reduced by $26,000.00 after paying the sanctions awarded here and those previously awarded. [Wang] has access to funds in at least one bank account and monthly income that is three times greater than Petitioner. She also will have an additional $26,000.00 to contribute towards fees based on this award and the outstanding sanctions. However, in reality, the Court cannot make an accurate determination of either the need or the respective ability of either party to pay fees based on their evasive, incomplete and impeached testimony. Thus, *need and ability* fees are denied." (Italics added.)

"need and ability" attorney fees under sections 2255 and 2030. Unlike section 271, these code sections require the court to find that the award is justified by the parties' *relative* income levels, needs and abilities to pay. (§§ 2255, 2032, subd. (a).) In declining to award fees under these statutes, the court stated it found *both* parties' testimony was "evasive" and "incomplete" regarding his or her own financial circumstances and thus an additional sanctions award under sections 2255 and 2030 was not warranted.

Viewed in context of the entire statement of decision, the court's comments on the section 2255/2030 sanctions issue did not negate the court's earlier factual finding that the $22,500 award was an appropriate sanctions amount *under section 271.* Absent evidence to the contrary, a trial court is presumed to understand and properly apply the applicable law. (*People v. Coddington* (2000) 23 Cal.4th 529, 644.) In her section 271 moving papers, Wang stated that "[i]n making an award of attorney's fees pursuant to [section 271], *the Court shall not impose a sanction that 'imposes an unreasonable financial burden on the party against whom the sanction is imposed.'* " (Italics added.) At the hearing, Weiss's attorney noted that he was seeking to submit evidence of Mr. Weiss's assets for the court to make an "informed decision" on the section 2030 matter *and* the 271 issues. In its statement of decision, the court stated Weiss had "some liquid assets" from which he could pay the $22,500 sanctions award.

On this record, we are satisfied the court's statement that it could not make an accurate determination of *both* parties' financial conditions pertained solely to the need/ability analysis of sections 2255 and 2030, and cannot be fairly interpreted to reflect the court's inability or failure to determine that the $22,500 award would not impose an

11

unreasonable financial burden on Weiss. Under settled appellate principles, we interpret the court's order as encompassing a finding that the award would not impose an unreasonable financial burden.

Further, to the extent Weiss challenges the sufficiency of the evidence to support the court's finding regarding the sanctions amount, this argument is without merit. First, Weiss waived the challenge by failing to set forth all the evidence presented on this issue at trial. (See *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) He ignores Wang's evidence regarding his financial resources, and discusses only the evidence favorable to him and does not provide supporting record citations.

Moreover, the record contains ample evidence to show the $22,500 sanctions award would not impose an unreasonable financial burden on Weiss. Viewing the facts in the light most favorable to Wang, the evidence showed Weiss is an experienced businessperson who has an ownership interest in two businesses (at least 50 percent in one business and 17 percent of the other business); owns three rental properties in addition to the home in which he is living; has savings accounts; owns a sports car (a Lotus) without any debt; drives a vehicle leased for him by one of his companies; and has company-paid medical and automobile insurance. Weiss testified that his businesses "depend on my personal credit in order to keep borrowing money," implying that his personal credit rating is strong.

At the hearing Weiss testified that he is "broke" and cannot afford to pay sanctions. However, this claim was substantially impeached at trial. For example, Weiss

12

testified the total equity on his three rental properties (other than his home) was $69,000. But he also acknowledged his February 2013 Schedule of Assets and Debts (Assets Schedule) showed his equity in these properties was even higher—approximately $115,000. In asserting that these properties should not be considered as part of his assets, Weiss testified that two of the properties were subject to a "1031 tax-deferred exchange" when he purchased them "some years ago." But he acknowledged he did not have a full understanding of the tax issues and could not explain how these issues precluded his ability to access these funds (or at least a portion of the funds) through a refinance or sale of the properties. Even if he would have owed taxes after a sale of the properties, he would still have equity available to pay the $22,500 sanctions award at the time of trial.

Weiss also acknowledged at trial that in February 2013 (two months before the annulment hearing was scheduled) he had $72,000 in savings in a Vanguard account, and shortly before that time, he withdrew $50,000 from this account to invest in one of his businesses. Weiss additionally testified he had a cash value in a life insurance policy of $26,932. To the extent any of these funds had dissipated by the time of the September hearing, the court had a reasonable basis to find that Weiss diverted the funds to avoid paying attorney fees.

Weiss argues the court erred in considering much of this evidence because the information was based primarily on his February 2013 Assets Schedule, and the court "refused to allow [him]" to present an updated Assets Schedule prepared in April 2013.

This contention concerns Weiss's counsel's request that Weiss be allowed to leave the witness stand during his cross-examination to look through his papers for a proof of

13

service for the claimed updated Assets Schedule. The court responded that this request did not appear to be "a good use of time." The court's ruling was well within its broad authority to manage the trial, and there is no showing of prejudice. Earlier in the trial, Wang testified that she had never received updated financial information, and Wang's counsel confirmed this fact. Weiss had the full opportunity to rebut these statements by producing the claimed April 2013 Assets Schedule during his direct and/or redirect examinations, but he never did so. The court's refusal to allow him to look for a proof of service during his cross-examination did not preclude Weiss from submitting this evidence at other times during the trial. Further, Weiss had the opportunity to testify about any change of circumstances since preparing the February 2013 Asset Schedule. On this record, there was no evidentiary error.

We additionally note that on redirect Weiss testified that the total value of his assets was $659,732.10, and that his total liabilities are $612,739.60, leaving his net worth at $57,007.50. Even assuming this statement was true, the court did not err in finding that a $22,500 attorney fees award would not cause a substantial financial burden under all of the circumstances, particularly given the evidence showing that Weiss had a substantial ability to earn income from his businesses and his rental properties. In considering whether an award would impose an "unreasonable financial burden" on the party to be sanctioned (§ 271, subd. (a)), a court may consider the party's ability to earn income in addition to his or her current assets and income level. (See *In re Marriage of Norton, supra*, 206 Cal.App.3d at p. 60 [interpreting former Civ. Code, § 4370.5, the predecessor to § 271].)

14

Finally, we reject Weiss's argument that we must reverse the sanctions order because the court stated that Weiss's testimony that one of his businesses (Image Flow) earned $61,000 in gross income during a three-month period was inconsistent with the documentary evidence showing bank deposits of $890,000 for this business during the same time period. Weiss notes that the court's $61,000 statement was incorrect—Weiss had actually testified that the deposits to Image Flow were $561,000.

There is no reasonable possibility the court would have reached a different conclusion on the sanctions amount if it had correctly identified the $561,000 figure. The $561,000 figure provides an even stronger basis for the court's conclusion that Weiss's businesses were earning money and thus he had access to liquid funds. Additionally, Weiss's testimony was impeached on numerous other related matters, and his lack of credibility on the precise Image Flow deposit amounts is not likely to have been a crucial factor in the court's credibility determinations.

IV. *Sanctions on Appeal*

In a lengthy motion, Wang requests that we order sanctions on appeal. Wang argues that sanctions are warranted because Weiss violated numerous appellate rules, failed to accurately state the relevant facts, and asserted frivolous legal arguments. (See Cal. Rules of Court, rule 8.276(a)(1), (2) & (4); Code Civ. Proc., § 907.) We decline to award sanctions. Although we have found Weiss did not meet his burden to show reversible error, his appeal was not frivolous.

In reaching this conclusion, we remind both parties and their counsel of the importance of adhering to the policies underlying the family law statutes, which require

15

parties to cooperate and work together to reduce litigation costs.  On our review of the record, we agree with the trial court that both parties engaged in inflammatory and unproductive litigation, and we echo the court's concerns that neither party's counsel has used his or her best efforts to reduce the level of hostility and acrimony in the litigation. We urge counsel to do so in the service of their clients' best interests.

DISPOSITION

Order affirmed.  The parties to bear their own costs on appeal.


HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.

16